John M. MORAN, Plaintiff–Appellant,

v.

STANDARD INSURANCE COMPANY, Defendant–Appellee.

No. 06CA2081.

Colorado Court of Appeals, Div. V.

May 15, 2008.

=781(4)

=6

Brice A. Tondre, Lakewood, Colorado, for Plaintiff–Appellant.

Lind, Lawrence & Ottenhoff, LLP, Clinton P. Swift, Windsor, Colorado, for Defendant–Appellee.

Opinion by Judge STERNBERG.*

Plaintiff, John M. Moran, appeals the trial court's judgment dismissing the complaint against defendant, Standard Insurance Company (Standard). We reverse and remand for further proceedings.

Plaintiff brought this action against Standard and the Public Employees Retirement Association (PERA) as the result of the termination of his PERA disability retirement benefits because Standard concluded that he no longer met the medical definition of disability. Standard acted as the administrator for PERA in determining a person's eligibility to receive or continue to receive PERA disability retirement benefits. Plaintiff asserted a breach of contract claim against PERA based on the termination of his disability retirement benefits and two claims against Standard for bad faith breach of insurance contract and breach of fiduciary duty based on its administration of the disability retirement benefits program.

Standard moved to dismiss plaintiff's claims against it on the basis that the complaint failed to state a claim for relief and because the claims were barred by the Colorado Governmental Immunity Act (CGIA), sections 24–10–101 to –120, C.R.S.2007. Standard argued that, as the disability retirement program administrator, it acted as an instrumentality of PERA, was a public entity for purposes of the CGIA, and therefore was immune from liability under C.R.C.P. 12(b)(1) for any tort-based claims arising from its administrative function. Standard also moved to dismiss plaintiff's claims pursuant to C.R.C.P. 12(b)(5), arguing that because it had not entered a contract with plaintiff, it did not owe him a duty of good faith and fair dealing, nor did the contract between it and PERA create any fiduciary duty toward plaintiff.

Following a hearing on Standard's motion, the trial court ruled from the bench that Standard, as the disability program administrator, was the means by which PERA determined entitlement to disability retirement benefits and that this procedure was mandated by statute. Accordingly, the trial court determined that Standard was entitled to immunity under the CGIA as an instrumentality of PERA and dismissed the claims against it on that basis. Consequently, the court did not address whether Standard owed a duty to plaintiff under the asserted claims for relief.

The trial court subsequently entered a written order incorporating its oral findings of fact and conclusions of law. The parties later filed a motion to dismiss the remaining claims for relief, which was granted by the trial court. Plaintiff then brought this appeal.

## I.

■ Initially, we reject Standard's contention that the appeal is moot because plaintiff settled his claims with PERA.

■ We will not consider and rule on the merits of an appeal when the issues presented to the trial court have become moot due to subsequent events. *Campbell v. Meyer,* 883 P.2d 617, 618 (Colo.App.1994). A case is moot when a judgment, if rendered, would have no practical legal effect upon an existing controversy. *Russell v. City of Central,* 892 P.2d 432, 435 (Colo.App.1995).

■ The acceptance-of-benefits doctrine provides that a party who accepts an award under a judgment waives the right to any review of the adjudication which would put at issue the right to the benefit accepted. *HealthONE v. Rodriguez,* 50 P.3d 879, 886–87 (Colo.2002).

Plaintiff does not dispute that he has settled his claims against PERA. However, he argues that this appeal is not moot because his claims against Standard are tort claims and the claim he settled with PERA was a contract claim. He notes that his tort claims against Standard entitle him to recover noneconomic damages and rehabilitation expenses, neither of which was recoverable in his contract claim against PERA. Finally, he argues that, at most, Standard would be entitled to an offset of the amount of his settlement with PERA.

Based on the differences in his claims for relief against Standard and PERA, we conclude that plaintiff's settlement of his PERA claim does not moot his claims against Standard.

## II.

■ Plaintiff contends that the trial court erred in finding that as an instrumentality of PERA, Standard was entitled to immunity under the CGIA. We agree.

■ The CGIA establishes immunity from tort actions for public entities and employees who are acting within the course and scope of their employment. §§ 24–10–102, 24–10–105, 24–10–108, 24–10–118, C.R.S.2007; *Podboy v. Fraternal Order of Police,* 94 P.3d 1226, 1228 (Colo.App.2004). The determination of whether there is immunity under the CGIA is a question of subject matter jurisdiction to be decided pursuant to C.R.C.P. 12(b)(1). *Fogg v. Macaluso,* 892 P.2d 271, 276–77 (Colo.1995); *Trinity Broad. of Denver, Inc. v. City of Westminster,* 848 P.2d 916, 924 (Colo.1993). Appellate review of the trial court's interpretation of the CGIA is de novo.

*Corsentino v. Cordova,* 4 P.3d 1082, 1087 (Colo.2000).

Pursuant to statute, PERA is required to provide both short-term disability and disability retirement benefits to eligible state employees. *See* § 24–51–702(1)(a)–(b), C.R.S.2007. In addition, the applicable statutes require PERA to contract with a third party to administer the disability program. § 24–51–703, C.R.S.2007. Specifically, PERA "shall contract with a disability program administrator to determine disability, to provide short-term disability insurance coverage, and to administer the short-term disability program." *Id.*

PERA has adopted rules governing its contract with Standard, including medical standards for the definition of disability for purposes of short-term disability and disability retirement. *See* PERA Rules 7.10 to 7.70, 8 Code Colo. Regs. 1502–1. Although Standard insures the short-term disability benefits provided by PERA to its members, it does not insure the disability retirement plan. PERA initially determines a person's statutory eligibility for disability retirement benefits, and Standard then determines whether a person is medically eligible to obtain or continue to receive benefits. PERA is responsible for paying any disability retirement benefits Standard determines are due. § 24–51–702(1)(b).

Standard argues that it acts as PERA's agent because, by statute, it acts in place of PERA when determining disability retirement benefits. As such, Standard argues that because PERA is an instrumentality of the state, *see* § 24–51–201(1), C.R.S.2007, and is considered a public entity under the CGIA, *see* § 24–10–103(5), C.R.S.2007, PERA's immunity under the CGIA extends to Standard in its capacity as PERA's agent. We disagree.

█ In construing the CGIA, we must examine the object sought to be attained by the statute, the consequences of a particular construction, and the legislative purpose of the statute. *See* § 2–4–203(1)(a), (e), (g), C.R.S. 2007; *Springer v. City & County of Denver,* 13 P.3d 794, 801 (Colo.2000).

The term "public entity" is defined in the CGIA as follows:

"Public entity" means the state, county, city and county, municipality, school district, special improvement district, and every other kind of district, agency, *instrumentality,* or political subdivision thereof organized pursuant to law and any separate entity created by intergovernmental contract or cooperation only between or among the state, county, city and county, municipality, school district, special improvement district, and every other kind of district, agency, *instrumentality,* or political subdivision thereof.

§ 24–10–103(5) (emphasis added).

The term "instrumentality" is not defined in the CGIA. However, a division of this court recently construed the term "instrumentality" as used in section 24–10–103(5) in determining whether a private corporation constituted a public entity for purposes of the CGIA when it acted as a licensed sales agent for the state lottery commission, itself a public entity. *See Robinson v. Colo. State Lottery Div.,* 155 P.3d 409, 413–14 (Colo.App. 2006), *aff'd in part and rev'd in part,* 179 P.3d 998 (Colo.2008).

As set forth in *Robinson,* 155 P.3d at 413–14, a central legislative purpose of the CGIA is to limit the potential liability of public entities for compensatory money damages in tort. The division noted, however, that this purpose would not be furthered by extending immunity to private lottery sales agents. In addition, the division noted that the term "instrumentality," if construed in the context in which it appears in the statute, expresses a legislative intent to "restrict the definition of that term only to those entities that are governmental in nature." *Id.* at 414. The division further noted that there was no express indication that the General Assembly intended to expand the scope of the CGIA to include a private corporation that had entered into a contract with the public entity. *Id.*

Similarly, in *Podboy,* 94 P.3d at 1229, a division of this court addressed whether the defendant, the official collective bargaining agent for employees of the Denver Sheriff Department, was a public entity for purposes

of the CGIA. The defendant argued that it was a public entity because the City and County of Denver, through the Denver Municipal Code, gave it governmental authority to act as the sole collective bargaining agent for the Denver Sheriff Department employees, and therefore, it was a separate entity created by intergovernmental contract. The division disagreed and held that the defendant was not a separate entity created by an intergovernmental contract with the City and County of Denver. The division observed that labor organizations have traditionally been considered private, not public entities. In particular, it noted that the federal district court for the District of Colorado in *Walker v. Board of Trustees*, 76 F.Supp.2d 1105 (D.Colo.1999), had rejected the argument that a labor union representing public employees was a public entity for purposes of the CGIA. *Podboy*, 94 P.3d at 1229.

We also note that the General Assembly has expressly excluded independent contractors from the definition of "public employees" under the CGIA. *See* § 24–10–103(4)(a), C.R.S.2007; *Springer*, 13 P.3d at 800. In addressing this provision, the supreme court has stated that "[t]he exclusion of independent contractors from the definition of 'public employee' means that an independent contractor cannot, under any circumstances, gain immunity by reason of the CGIA's provisions." *Springer*, 13 P.3d at 800; *see Safari 300, Ltd. v. Hamilton Family Enters., Inc.*, 181 P.3d 278 (Colo.App.2007) (a corporation cannot be a public employee under the CGIA).

Therefore, in concordance with the division in *Robinson*, we conclude that the trial court erred in determining that Standard was a "public entity" and that it was entitled to immunity under the CGIA. Standard's status as a private corporation, even one that has entered a contract with a public entity, precludes its treatment as a public entity under the CGIA.

To the extent Standard argues that the decision in *King v. United States*, 53 F.Supp.2d 1056, 1067 (D.Colo.1999), *rev'd in part*, 301 F.3d 1270 (10th Cir.2002), supports the conclusion that a corporation may constitute a public entity for purposes of the

CGIA, we find that case concerning a charter school to be distinguishable. In making this argument, Standard ignores the pertinent legislation cited by the court that "[a] charter school may organize as a nonprofit corporation pursuant to the 'Colorado Nonprofit Organization Act' . . . which shall not affect its status as a public school for any purposes under Colorado law." *King*, 53 F.Supp.2d at 1066; *see also* § 22–30.5–104(4), C.R.S.2007. Consequently, because no analogous language exists for private corporations or organizations that contract with PERA, we conclude that the holding in *King* is inapposite.

Nevertheless, because the trial court did not address whether plaintiff has stated viable claims against Standard, we remand the case for further proceedings on that issue.

The judgment is reversed, and the case is remanded to the trial court to reinstate plaintiff's claims against Standard and for further proceedings regarding whether Standard owed a duty to plaintiff.

Judge ROY and Judge GRAHAM concur.